THE PEOPLE OF THE STATE OF ILLINOIS, Respondent-Appellee, v.
WILLIAM CAMERON, Petitioner-Appellant.

First District (5th Division)   No. 85—690

Opinion filed August 7, 1987.—Rehearing denied September 11, 1987.

Steven Clark and Barbara Kamm, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Bonnie Meyer Sloan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

This is an appeal by petitioner, William Cameron, from a trial court order granting the State's motion to dismiss his *pro se* petition for post-conviction relief. Petitioner and his codefendant, Darvin Meadows, were convicted of murder, armed robbery, and attempted murder after a jury trial. In December 1978, both men were sentenced to concurrent terms of 100 to 300 years for murder, 10 to 30 years for armed robbery, and 5 to 15 years for attempted armed robbery.

Both defendants were initially represented by separate private counsel who withdrew before trial. We note that Cameron's attorney had moved for severance before withdrawing. Thereafter Public Defenders Stuart Nudelman and John Friedman of the Cook County public defender's office were appointed to represent the defendants. Prior to trial, during trial, and after trial Nudelman made repeated objections to the joint trial and requested severance and/or appointment of separate counsel for the two defendants. Before trial, Nudelman requested permission to withdraw as counsel for either Cameron or Meadows and asked that the cases be severed on the basis that Meadows had made statements incriminating Cameron. In response, the State argued that the witnesses' testimony would be limited to Meadows' own statements about his own conduct. After hearing arguments, the trial court stated that even if references to Cameron were excised, it was not possible for the defendants to be tried together and granted the motion to sever.

Assistant public defender Nudelman again asserted that he could not effectively represent both defendants. The next day, the State asked the court to reconsider the severance motion and assured the court that it would not present any statement by Meadows that would incriminate petitioner Cameron. Based on this representation, the court denied the motion to sever. On subsequent court dates, Nudelman renewed his motions for severance and appointment of separate counsel, which were denied.

The convictions arose out of the armed robbery of a tavern on Chicago's near north side in November 1976. Two men, one carrying a sawed-off shotgun, entered the tavern and robbed the patrons and emptied the cash register. During the robbery, several patrons were physically abused. One Mexican customer, who appeared not to understand English, struggled with the robbers and was deliberately killed. Three customers followed the robbers as they fled outside and saw them get into a car. Three customers and the tavern owner identified Meadows as one of the robbers, and petitioner was identified by the

owner and two customers and also was identified as the man with the gun.

Based on the witnesses' descriptions of the robbers and getaway car, Meadows was subsequently arrested while driving the car. After his arrest, Meadows was questioned by Investigator Daniel Darcy. Darcy testified that immediately after speaking with Meadows, he (Darcy) told Investigator William Bogue that the second suspect they were looking for was petitioner Cameron. During his testimony, Darcy did not state that he had received this information from Meadows. At this point, defense counsel Nudelman objected and moved for a mistrial because the State's sequence of questions to Darcy indicated that Meadows implicated Cameron, which the State had promised not to do. Nudelman also moved to withdraw from representation of both defendants, stating that he could not cross-examine Darcy on this matter because it would involve his other client's (Meadows') statements. The trial court denied the motions and said, "I don't know what inference the jury is going to be drawing from that, *** but I think it was handled very poorly." Continuing his testimony, Darcy stated that he and another police officer drove with Meadows to a house pointed out by Meadows. A search warrant was obtained and a sawed-off shotgun and ammunition rounds were recovered therein. At the end of Darcy's testimony, Nudelman again moved for a mistrial, which motion was denied.

Investigator Bogue then testified that he arrested petitioner later that same day and, in searching Cameron's car with his permission, found documents with Meadows' name on them and a brown wallet, which was identified at trial as one taken from a tavern customer during the robbery. Nudelman again renewed his motion for a mistrial because of his inability to cross-examine witnesses. Another witness testified regarding petitioner's alibi. She stated that both men spent the evening at her residence until Meadows left at 10:15 p.m. followed by petitioner's departure at 10:35 p.m. The robbery occurred at 10:45 p.m. at a location approximately 5½ miles away from the residence. After the jury found both defendants guilty, the court denied a defense motion for a new trial on the basis of, among other matters, the severance and conflict of interest issues.

Petitioner and Meadows on direct appeal to this court were represented by the Cook County public defender's office. In 1980, pursuant to *Anders v. California* (1967), 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396, the public defender moved to withdraw, on the basis that there were no appealable issues, and requested that the Office of the State Appellate Defender be appointed counsel for defendants at their

request. This court, after an independent review of the record as mandated by *Anders,* permitted the Cook County public defender to withdraw, denied appointment of new counsel, and affirmed the convictions of both defendants in a Rule 23 order.

Petitioner Cameron filed his *pro se* post-conviction petition in 1982. The petition alleged several constitutional defects: (1) he was denied effective assistance of counsel at trial because the same attorney represented both him and Meadows when their defenses were inconsistent and antagonistic; (2) his trial attorney had a conflict of interest; (3) he was denied his due process rights by denial of severance and use of codefendant's statement at the joint trial; and (4) he was denied effective assistance of appellate counsel because of the *Anders* motion and the failure of counsel to raise his trial counsel's ineffectiveness. The Office of the Cook County Public Defender was appointed to represent petitioner at the post-conviction hearing, which was not held until 1985. Petitioner's counsel did not supplement the *pro se* petition and did not argue the ineffectiveness of appellate counsel on direct appeal at the post-conviction hearing. After the hearing, the court granted the State's motion to dismiss the petition.

Petitioner, represented by a State Assistant Appellate Defender, is now appealing that dismissal on the grounds that: (1) he was denied effective assistance of counsel during the post-conviction proceedings where the petition alleged the incompetence of the public defender on his direct appeal, and the public defender's office represented him on the post-conviction hearing; (2) he was denied effective assistance of counsel on post-conviction because his attorney failed to raise the constitutional issue that his appellate counsel on direct appeal was ineffective by moving to withdraw pursuant to *Anders* where the trial record established that petitioner was denied effective representation at trial because of the frequently objected-to joint representation; and (3) it was error for the same trial court judge to hear the post-conviction petition.

■■ First, we will consider petitioner's third contention that the trial court erred by hearing his post-conviction petition. The statute relied on by petitioner for the alleged error, section 122—8 of the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—8), was recently held unconstitutional as a legislative encroachment upon a judicial prerogative in *People v. Joseph* (1986), 113 Ill. 2d 36, 495 N.E.2d 501. Thus, this contention has been preempted by the *Joseph* decision and is meritless.

Petitioner's second argument that his post-conviction counsel was ineffective for failing to raise his assertion of ineffective appellate

counsel on his direct appeal raises a procedural quagmire. On direct appeal, the appellate public defender made an *Anders* motion to withdraw on the basis that the trial record disclosed no issues that could arguably support Cameron's appeal. Petitioner's *pro se* post-conviction petition alleged, among other issues, that appellate counsel was ineffective for failing to raise the issues of severance and a conflict of interest problem asserted many times by his public defender at trial. The public defender representing petitioner at his post-conviction hearing made no amendments to the *pro se* petition, nor did she argue the merits of the issue of appellate counsel's alleged ineffectiveness.

The State contends that the record clearly establishes that petitioner was not denied effective assistance of counsel at trial and on appeal and, therefore, petitioner's post-conviction counsel was not ineffective in neither amending the *pro se* petition nor arguing the issue at the post-conviction hearing. We disagree and believe this situation calls for reversal for an evidentiary hearing.

■■ ■ It is appropriate to raise the issue of trial counsel's competency in a post-conviction proceeding, and consideration of alleged trial errors as they relate to this issue is not barred by an alleged waiver arising from incompetency of appointed counsel on appeal. (*People v. Frank* (1971), 48 Ill. 2d 500, 503, 272 N.E.2d 25.) However, it is not incompetence for counsel to refrain from raising an issue which, in his judgment, is without merit, unless his appraisal of the merits is clearly wrong. (48 Ill. 2d 500, 505, 272 N.E.2d 25.) And, an allegation of ineffective assistance of appellate counsel may raise an issue of constitutional dimensions which is cognizable in a post-conviction hearing. (*People v. Cooper* (1986), 148 Ill. App. 3d 412, 417, 499 N.E.2d 599.) Moreover, appointed counsel has a duty to investigate contentions contained in a post-conviction petition and to cogently present them at the hearing. *People v. Smith* (1977), 56 Ill. App. 3d 569, 574, 371 N.E.2d 921.

■■ ■ In his petition, Cameron alleged that his trial counsel had a conflict of interest stemming from the joint representation and that his appellate counsel failed to consider such a claim meritorious. The sixth amendment fundamental right to effective counsel means assistance that entitles an accused to the undivided loyalty of his counsel and that prohibits counsel from representing conflicting interests or undertaking the discharge of inconsistent obligations. (*People v. Washington* (1984), 101 Ill. 2d 104, 110, 461 N.E.2d 393.) Furthermore, a defendant need not show prejudice if his attorney has an actual or possible conflict of professional interests. (101 Ill. 2d 104, 110, 461 N.E.2d 393.) The Supreme Court in *Holloway v. Arkansas* (1978), 435 U.S. 475,

483-84, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178-79, held that a lawyer forced to represent codefendants whose interests conflict cannot provide the adequate legal assistance required by the sixth amendment. When an attorney timely objects to joint representation because of the probable risk of a conflict of interest and the trial court fails "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel," defendant has been denied effective assistance of counsel. (435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178.) In this situation prejudice is assumed and no independent showing of prejudice is required. (435 U.S. 475, 489, 55 L. Ed. 2d 426, 437, 98 S. Ct. 1173, 1181.) It was also noted in *Holloway* that in a criminal matter, the defendants' attorney is in the best position professionally and ethically to determine when a conflict exists or will probably develop during trial. 435 U.S. 475, 485, 55 L. Ed. 2d 426, 435, 98 S. Ct. 1173, 1179.

In the present case, because of Nudelman's repeated assertions to the trial court that he could not adequately cross-examine witnesses, his objections to the purported use of an incriminating statement by petitioner's codefendant, the alleged behavior by the State of employing a guilt by association strategy, and possible antagonistic defenses as evidenced by the conflicting alibis, a conflict of interest is possible. At the hearing on Nudelman's motion to sever, the attorney told the trial court that there was no way he could effectively cross-examine at a joint trial which also would affect his decision as to whether he could put either of the defendants on the stand. In first granting the severance motion, the trial court noted that it could not conceive of any manner of introducing testimony regarding Meadows' confession, even with reference to Cameron excised, that would not incriminate Cameron. Also at this hearing, Nudelman again asked to withdraw his joint representation.

The next day, at a hearing to reconsider the granting of the motion, the State pledged that it would not introduce any of Meadows' confession statements and the court denied severance. During trial, Investigator Darcy testified that he had a half-hour conversation with Meadows after advising him of his rights, and then immediately afterwards went to the next door office and informed Investigator Bogue that they were looking for a second man, whose name was William Cameron. Nudelman then objected and moved for a mistrial, arguing that this sequence of questioning led to only one inference—that Cameron was Meadows' accomplice—and that there was no effective way to cross-examine Darcy. The court responded, "I am going to deny the motion, but I think it was handled very poorly." Then Nudelman again

moved to withdraw for the appointment of private counsel and was denied. Later Nudelman again motioned for a mistrial because he could not effectively cross-examine Bogue. The record also shows that neither defendant took the stand and that defendants had possibly antagonistic alibis.

■ Our careful examination does disclose a possible conflict of interest in the joint representation at trial, a possibility strengthened by Nudelman's vociferously repeated objections to the joint representation. While we in no way are deciding the merits of this conflict of interests issue, under the *Holloway* standard it is apparent that the matter was sufficiently meritorious that it should have been pursued by the assistant public defender on petitioner's direct appeal. By making an *Anders* motion to withdraw, appellate counsel did not raise the questions of severance or conflict of interest. And, at the post-conviction hearing, petitioner's counsel did not argue the possible ineffectiveness of either the trial or appellate counsel. Under these facts, it is necessary to remand this cause for an evidentiary hearing on the constitutional issue as to whether petitioner received effective assistance of counsel at trial.

■ We next consider petitioner's contention that he was denied effective assistance of counsel during the post-conviction hearing because of a conflict of interest where his petition alleged the incompetence of the public defender on his direct appeal and the public defender represented him on the post-conviction petition. Illinois law on this issue is not clearly delineated. (See *People v. Edwards* (1986), 147 Ill. App. 3d 276, 497 N.E.2d 1218 (such representation is ineffective assistance of counsel); contra, *People v. Neely* (1980), 85 Ill. App. 3d 1016, 407 N.E.2d 814 (no ineffective assistance of counsel).) However, this issue is now pending before our supreme court in the consolidated cases of People v. Banks (Docket No. 62815), People v. Duquaine (Docket No. 63352), and People v. Blake (Docket No. 63179). Until a decision issues clarifying this matter, we prefer to adhere to the holding in *People v. Smith* (1967), 37 Ill. 2d 622, 230 N.E.2d 169. Accordingly, we reverse and remand this cause with instructions that the trial court appoint counsel other than the public defender to represent petitioner at the evidentiary hearing on his post-conviction petition.

Reversed and remanded with instructions.

SULLIVAN, P.J., and LORENZ, J., concur.